UNITED STATES DISTRICT COURT
EASTERN  DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JOSE FIGUEROA,

|  |  |
|---|---|
| Plaintiff, | COMPLAINT |
| vs. | Case No.: 1:17-cv- |
| NORMAN FINK, NORMAN M. FINK &<br>COMPANY, INC., LUNG GANG CHEN<br>and UCT CLEARVIEW RESTAURANT<br>CORP., | JURY TRIAL DEMANDED |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - -x

Plaintiff, JOSE FIGUEROA, (hereinafter the "Plaintiff"), through his

undersigned counsel, hereby files this Complaint and sues  NORMAN FINK,

NORMAN M. FINK & COMPANY, INC., LUNG GANG CHEN and UCT

CLEARVIEW RESTAURANTCORP. (hereinafter, the "Defendants"), for injunctive

relief, attorney's fees and costs (including, but not limited to, court costs and expert

fees) pursuant to 42 U.S.C. §12181, et. seq., of the AMERICANS WITH

DISABILITIES ACT ("ADA"), the NEW YORK CITY HUMAN RIGHTS LAW

("NYCHRL"), and the NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL")

and alleges:

## <u>JURISDICTION AND PARTIES</u>

1.     This is an action for declaratory and injunctive relief pursuant to Title III

of the Americans With Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter

referred to as the "ADA"). This Court is vested with original jurisdiction under

28 U.S.C. §1331, 1343, 2201 and pursuant to §1367(a) and the Court has

supplemental jurisdiction over Plaintiff's claims brought under the laws

2.      Venue is proper in this Court, pursuant to 28 U.S.C. §1391(B) in that all events giving rise to this lawsuit occurred in New York and the acts of discrimination alleged in this complaint occurred in this District and the public accommodation which is the subject of this action is situated in this District.

3.      The remedies provided by the New York State Human Rights Law against Discrimination are not exclusive and state administrative remedies need not be exhausted in connection with suits brought under the Federal Civil Rights Act. At the time of Plaintiff's visit to the Defendants' Subject Facility in October of 2017 prior to instituting the instant action, JOSE FIGUEROA (hereinafter refereed to as "Plaintiff") was a resident of the State of New York and suffers from what constitutes a "qualified disability" under the ADA of 1990. He is an individual with numerous disabilities including spinal stenosis which causes a restriction to his spinal canal resulting in neurological deficits.

4.      The Plaintiff personally visited Defendants' Property, but was denied full and equal access to, and full and equal enjoyment of the facilities at Defendants' Property, which is the subject of this lawsuit.

5.      Upon information and belief Defendants are authorized to conduct, and is conducting business within the State of New York and is (are) the owner, lessor, lessee and/or operator of the real property (hereinafter and heretofore referred to collectively as "Defendants' Property") and the owner of the improvements of the Subject Facility which is located at 185-23 Union Turnpike Flushing, New York 11366 (hereinafter and heretofore referred to collectively as "Subject Facility").

6.      Upon information and belief the Defendants maintain, manage and control

lawsuit occurred in the City and State of New York and as such venue is

proper in this Court as the premises are located in the City and State of

New York.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

8.      On or about July 26, 1990, Congress enacted the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §12101, et. seq.  Commercial enterprises were

provided one and a half years from enactment of the statute to implement its

requirements. The effective date of the Title III of the ADA was January 26, 1992. 42

U.S.C. §12181; 20 C.F.R. §36.508(a).

9.      Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical
or mental disabilities, and this number shall increase as the
population continues to grow older;

(ii)     historically, society has tended to isolate and segregate
individuals with disabilities, and, despite some improvements,
such forms of discrimination against disabled individuals
continue to be a pervasive social problem, requiring serious
attention;

(iii)    discrimination against disabled individuals persists in such
critical areas as employment, housing, public accommodations,
transportation, communication, recreation, institutionalization,
health services, voting and access to public services and public
facilities;

(iv)     individuals with disabilities continually suffer forms of

(v)     discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices. Exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

(vi)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

10.     Congress explicitly stated that the purpose of the ADA was to

(ii)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(i)     provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

(i)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

11.     Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36.104, the Subject

Facility is a place of public accommodation in that it is a Restaurant

store  which provides goods and services to the public.

12.      The Plaintiff is informed and believes, and therefore alleges, that the Subject Facility has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

13.      Defendants have discriminated, and continues to discriminate, against the Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of, goods, services, facilities, privileges, advantages and/or accommodations at Defendant's Property, in derogation of 42 U.S.C. §12101, et. seq., and as prohibited by 42 U.S.C. §12182, et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C.§12182(b)(2)(a)(iv), where such removal is readily achievable.

14.      The Plaintiff has been unable to, and continues to be unable to, enjoy full and equal safe access to, and the benefits of, all the accommodations and services offered at Defendants' Property. Prior to the filing of this lawsuit, Plaintiff personally visited Defendants' Property, with the intention of using Defendants' facilities, but was denied access to the Subject Property, and therefore suffered an injury in fact. Plaintiff specifically intends to visit the Subject Facility in the future, but continues to be injured in that he is unable to and continues to be discriminated against due to the architectural barriers which remain at Subject Property, all in violation of the ADA, and the New York State and New York City Human Rights Law. The barriers to access the Restaurant have effectively denied or diminished Plaintiff's ability to visit the property and have caused embarrassment, humiliation and frustration to the Plaintiff.

15.        Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with D i s a b i l i t i e s  Act Accessibility Guidelines (hereinafter "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

16.        The Defendants' Subject Facility is in violation of 42 U.S.C. §12181, et. seq., the ADA and 28 C.F.R. §36.302, et. seq., and is discriminating against the Plaintiff as a result of inter alia, the following specific violations:

This property fails to comply with section; 206.2.1 Site Arrival Points. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve. This violation made it dangerous for Plaintiff to attempt to get to the entrance of the facility. Plaintiff had difficulty getting out of his vehicle and finding an area that would allow him to exit his vehicle safely. Plaintiff was able to get out of his vehicle only after much struggle, and felt very unsafe since there was no access aisle at the facility. Plaintiff had to maneuver throughout the outside facility into traffic coming to park at the Defendant's Facility. Plaintiff felt there was no protection from moving cars. This property fails to comply with section; 206.2.2 Within a Site. At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site. This violation made it dangerous for Plaintiff to transgress the parking lot. Plaintiff did not have an aisle

with which to safely exit his vehicle. Therefore, Plaintiff had a hard time getting out of his vehicle and finding an area that would allow him to exit his vehicle safely. Plaintiff was able to get out of his vehicle only after much struggle, and felt very unsafe since there was no access aisle at the facility. Plaintiff had to maneuver throughout the outside facility into traffic coming to park at the Defendant's Facility. Plaintiff observed there was no protection from moving cars. This property fails to comply with section; 303.4 Ramps. Changes in level greater than 1/2 inch (13 mm) high shall be ramped, and shall comply with 405 or 406. This violation made it dangerous for Plaintiff to attempt access to the Facility in his because the slope of the ramp was too steep. Plaintiff was forced to expend considerable effort and time in attempting to entering the facility. This property fails to comply with section; 405.2 Slope. Ramp runs shall have a running slope not steeper than 1:12. This violation made it dangerous for Plaintiff to gain access to the Facility in his because the slope of the ramp was too steep. This property fails to comply with section; 405.7 Landings. Ramps shall have landings at the top and the bottom of each ramp run. Landings shall comply with 405.7. This violation made it dangerous for Plaintiff to attempt to gain access to the Restaurant. Plaintiff had trouble maneuvering throughout the outside entrance of the Subject Facility. This property fails to comply with section; 406 Curb Ramps 406.1 General. Curb ramps on accessible routes shall comply with 406, 405.2 through 405.5, and 405.10. This violation made it dangerous for Plaintiff to gain access to the Facility. Plaintiff had difficulty maneuvering throughout the outside entrance of the Subject Facility. Because the entrance ramp was not accessible Plaintiff attempted entering the facility with great difficulty.  This property fails to comply with section; 502.2 Vehicle Spaces. Each parking space must be at least 12 feet (3658 mm) wide, shall be marked to define the width, and shall

have an adjacent access aisle complying with 502. This property fails to comply with

section; 502.3 Access Aisle. Access aisles serving parking spaces shall comply with

502.3. Access aisles shall adjoin an accessible route. Two parking spaces shall be

permitted to share a common access aisle. This violation made it dangerous for Plaintiff

to transgress the parking lot. Plaintiff did not have an aisle with which to safely exit his

vehicle. Therefore, Plaintiff had great difficulty getting out of his vehicle and finding an

area that would allow him to exit his vehicle safely. Plaintiff was able to get out of his

vehicle only after much struggle, and felt very unsafe since there was no access aisle at

the facility. Plaintiff had to maneuver throughout the outside facility into traffic coming

to park at the Defendant's Facility. Plaintiff observed there was no protection from

moving cars.  This property fails to comply with section; 502.4 Floor or Ground Surfaces.

Parking spaces and access aisles serving them shall comply with 302. Access aisles shall

be at the same level as the parking spaces they serve. Changes in level are not permitted.

This violation made it dangerous for Plaintiff to transgress the parking lot.  This property

fails to comply with section; 502.6 Identification. Parking space identification signs shall

include the International Symbol of Accessibility complying with 703.7.2.1. Signs

identifying van parking spaces when required by 502.2 shall contain the designation "van

accessible". Failure to provide adequate directional and accurate informational signage

throughout the Subject Facility as required by 28 C.F.R. Part 36, Section 4.1.3(16).

Failure to provide signage in the Subject Facility addressing people with disabilities

telling them that accessible services are provided as required by 28 C.F.R. Part 36,

Section 4.30.4. Failure to provide accessible entrance to the Restaurant as result of  the

failure to install ramps with appropriate slope and signage, and/or otherwise provide an

accessible and properly designated entrance, as required by 28 C.F.R. Part 36. Standards

4.3.2(1) requires at least one accessible route be provided from public streets or

sidewalks to the accessible building entrance they serve. The rise/step at the entrance to the Restaurant means there is no accessible route for the Plaintiff and individuals who use wheelchairs and violates 206.1, 206.2, and 206.2.1 by failing to provide accessible routes from the city sidewalk to the restaurant entrance. The entrance at the Restaurant door violates 404.2.4, which requires minimum maneuvering clearances at doorways; 404.2.4.3 by failing to provide adequate maneuvering clearance for a recessed doorway. Changes in level are not allowed. Required minimum maneuvering clearance not provided at entrance door to the Restaurant;  The entrance to the Restaurant is in violation of 404.2.6 when pivoted doors or gates are in series, a separation is required that is at least 48" plus the width of doors or gates swinging into the space. This would allow users to clear one door or gate before opening the next and applies to those doors or gates that are opposite each other where travel through both doors is required. Failure to provide accessible aisles of at least 36 inches clearance between parallel edges of tables or between a wall and the table edges to all accessible tables in accordance with the requirements of 28 C.F.R. Part 36, Section 5.3. Inaccessible dining tables as required minimum knee and toe clearance not provided at dining tables. The flight of  the interior stairs, to the  Restroom, create  an insurmountable barrier to the ingress and egress of Plaintiff and other individuals who use wheelchairs violating 207.1; Failure to provide access to restroom, on lower level without an elevator and/or wheelchair lift, in violation of 28 C.F.R. Part 36, Section 4.3. Failure to provide an accessible pathway, of at least 36 inches in width, in front of restroom area, in violation of 28 C.F.R. Part 36, Section 4.3.3. Failure to provide at least one lavatory that has a clear floor space for a forward approach of at least 30 inches wide and 48 inches long as required by 2010 ADAAG § 606.2;

Failure to install the required rear grab bar in restroom, around an accessible toilet in accordance with 28 C.F.R. Part 36, Section 4.17.6.

Failure to provide sufficient clear floor space around a water closet which does not allow for any obstructing elements in this space as required by 2010 ADAAG §§ 4.22, 603, 603.2.3, 604, 604.3 and 604.3.1. Failure to provide sufficient clear floor space/sufficient turning radius, in restroom, to provide safe adequate maneuverability space, as required by 28 C.F.R. Part 36.  Failure to provide a clear path to the water closet that is the proper width as required by 2010 ADAAG § 403.5.1; Failure to provide accessible restroom door handle, that can be operable with one hand and does not require tight grasping, pinching or twisting of the wrist, as required by 28   C.F.R Part 36, Sections 4.13.9 and 4.27.4.

Failure to provide at least 17 inches depth clearance under lavatories as required by 28 C.F.R. Part 36, Section 4.19.2, and storage of items underneath. Failure to provide the required underside clearance of at least 29 inches above the finished floor to the bottom of the apron under lavatory for accessibility, in compliance with 28 C.F.R. Part 36, Section 4.1 and Section 4.19.2.

Failure to provide an accessible locking mechanism on restroom door that can be operable with one hand and shall not require tight grasping, pinching or twisting of the wrist as required by 28 C.F.R. Part 36, Section 4.27.4.

Photographs depicting some of the discriminatory barriers are annexed as *Exhibit 1*, made a part hereof and incorporated by reference herein.

7.    Upon information and belief, there are other current violations of the ADA at Defendants' Property, and only upon a full

inspection can all said violations be identified.

8.    To date the architectural barriers, the removal of which is readily achievable, and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

9.    Pursuant to the ADA, 42 U.S.C. §12101 et seq., and 28 C.F.R. §36.304, the Defendants were required to make the Subject Facility, a place of public accommodation, accessible to persons with disabilities since January 28, 1992. To date, the Defendant has failed to comply with this mandate.

10.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant the Plaintiff's injunctive relief; including an order to alter the subject facility to make them independently accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the subject facilities until the requisite modifications are completed.

11.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. sections 12188(b)(1)(B)(i), (b)(2)(A)(iv), and 28 C.F.R. Sec. 503(a).

## COUNT II - VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW

12.    The New York City Human Rights Law provides:

(a) It shall be an unlawful discriminatory practice for any person,

being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of … disability …

NYC Admin. Code § 8-107(4)(a).

13.     Defendants are in violation of the New York City Human Rights Law

by denying the Plaintiff full and safe access to all of the benefits,

accommodations and services of the Subject Facility.

14.     The Plaintiff repeats and re-alleges the allegations of paragraphs 1

through 22 as if set forth in their entirety herein.

## COUNT III - VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW

15.     The New York State Human Rights Law provides:

(a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation…. because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability ……NYS Executive Law § 296 (2) (a).

16.     Defendants' Property is a place of public accommodation as defined

in the New York State Human Rights Law.

17.     The Defendants have further violated the New York State Human Rights

Law by being in violation of the rights provided under the ADA.

18.     Defendants are in violation of the New York State Human Rights Law by

denying the Plaintiff full and safe access to all of the benefits,

accommodations and services of the Subject Facility.

19.     The Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2) (c) (iii).

20.     The Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 27 as if set forth in their entirety here.

21.     As a direct and proximate result of Defendants' unlawful discrimination, in violation of the Executive Law Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to humiliation, shame, embarrassment, stress and anxiety.

## ATTORNEYS' FEES AND COSTS

22.     The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendants, pursuant to the ADA and the New York City Human Rights Law. Plaintiff prays for judgment pursuant to N.Y. Exec. Law § 297, including compensatory damages contemplated by § 297(9).

## DAMAGES

33.     Plaintiff demands compensatory damages in the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) per violation of the NYCHRL and the NYSHRL, severally;

## <u>INJUNCTIVE RELIEF</u>

34.     Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant the Plaintiff's injunctive relief; including an order to alter the subject facilities to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York City Human Rights Law, and the New York State Human Rights Law and closing the subject facilities until the requisite modifications are completed.

**WHEREFORE**, the Plaintiff hereby demands judgment against the Defendants and requests the following injunctive and declaratory relief:

A.     The Court declares that the subject property and Subject Facility owned, operated, leased, controlled and/or administered by the Defendants are violative of the ADA, the New York City Human Rights Law, Executive Law and of the New York State Human Rights Law;

B.     The Court enter an Order requiring the Defendants to alter their facilities and amenities to make them accessible to and usable by individuals with disabilities to the full extent required by the Title III of the ADA, the NYCHRL and the NYSHRL;

C.     Issue a permanent injunction ordering the Defendants to remove all violations of the ADA, Executive Law and Administrative Code, including, but not limited to, the violations set forth above;

D.     Award plaintiff compensatory damages in a sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) per violation, of the NYCHRL and the NYSHRL, severally;

E.     Issue a permanent injunction against the defendants, requiring defendants and all persons or entities in active concert therewith, to provide accessible route into the restaurant at the Premises for individuals who use wheelchairs, and to make all public portions of the Premises accessible to him and others so situated;

F.     Find that plaintiff is a prevailing party in this lawsuit and award reasonable attorney's fees, costs and expenses against defendant, and award such other and further relief, at law or in equity, to which plaintiff may be justly entitled;

G.     Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

H.     The Court awards such other and further relief as it deems necessary, just and proper.

**<u>JURY DEMANDED</u>**

Plaintiff demands a trial by jury of all issues of fact and damages.

Dated:  Syosset, New York June
        October 19, 2017


_____S/S_____
Stuart H. Finkelstein, Esq.
Finkelstein Law Group, PLLC
Attorneys for Plaintiff
338 Jericho Turnpike
Syosset, New York 11791
Telephone: (718) 261-4900









